## GENERAL MOTORS ACCEPTANCE CORPORATION v. HIGGINS.

### No. 202, Docket 20502.

Circuit Court of Appeals, Second Circuit.

May 14, 1947.

John Thomas Smith, of New York City (Anthony J. Russo, of New York City, of counsel), for plaintiff-appellee.

John F. X. McGohey, of New York City, U. S. Atty (Nathan Skolnik, of New York City, of counsel), for defendant-appellant.

Before SWAN, CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff in 1935 borrowed $25,000,000 from eight corporations and delivered to them eighty-four unsecured instruments ranging in face amounts from $100,000 to $1,000,000. In some of these instruments it promised to pay the amount stated therein to the named holder, and in the others to bearer. Interest was payable on all of them at designated places at intervals of six months at 3¼ per cent, and the principal was payable on various maturity dates none of which were less than four and one half, nor more than five, years from the date of issue.

The Commissioner of Internal Revenue assessed a stamp tax on these instruments, which amounted in the aggregate to $25,000, on the ground that they were taxable pursuant to the provisions of Schedule A-1 of Title VIII of the Revenue Act of 1926, § 800 et seq., as amended by § 721(a) of the Revenue Act of 1932 which is found in Title 26 U.S.C.A. Int.Rev.Code, § 1801. The plaintiff paid the tax under protest to the defendant who was the Collector of Internal Revenue for the Third District of New York and, after a claim for refund had been duly filed and rejected, brought this suit in the District Court for the Southern District of New York to recover it. Trial was had by court without a jury upon stipulated facts. From a judgment for the plaintiff to recover the full amount paid with interest, the defendant has appealed.

The appellee is a New York corporation whose only business is to provide financial assistance to dealers in the products of the General Motors Corporation and to their retail customers. Its board of directors passed a resolution on December 17, 1934, authorizing its officers to borrow from not more than ten investors approximately $30,000,000 on its promissory notes provided that could be done at rates and on terms which were in the judgment of the officers "to the interests of the corporation." It was also resolved that "prior to the sale of such promissory notes the officers of the corporation shall obtain the authorized statement in writing of each purchaser to the effect that its purchase is for investment account and not with the view of distribution to the public."

The instruments previously mentioned were sold pursuant to the provisions of the resolution, and subject to the opinion of counsel for the investors that the purchase of them, or their resale, would not violate the Securities and Exchange Act of 1933, 15 U.S.C.A. § 77a et seq., or any rule or regulation promulgated thereunder.

These so-called notes under discussion were unsecured instruments printed on tinted papers with engraved borders. They were issued in series form designated H to K and each bore a serial number, but they were not issued with interest coupons nor in registered form. The serial numbers served to identify them and the sale of each was entered upon the appellee's books. They all bore the corporate seal of the appellee and were redeemable prior to the maturity date on sixty days' notice at a premium of one quarter of one per cent for each six months the term was shortened. Each note provided that the appellee would not, so long as it was outstanding, "at any time pledge or otherwise subject to a lien any of its property or assets without thereby expressly securing the due and punctual payment of this note equally and ratably with any and all obligations and indebtedness secured by such pledge or other lien," with the proviso that

this restriction should "not apply to any financing by the Corporation in connection with the export or marketing of goods in foreign countries other than the Dominion of Canada and in said connection the Corporation reserves the right, in accordance with customary and established banking practice, to deposit or otherwise to subject to a lien receivables for collection or as a basis for the issuance of bankers' acceptances or in aid of other similar borrowing arrangements." The appellee further agreed in each note that the authentication, therein required by means of the signature of its Comptroller, or of some person acting in his behalf should not be performed "unless the Corporation at the time of such authentication owns receivables, installment payment obligations, cash or cash on deposit to its order, pledged or unpledged, in the aggregate to an amount at least equal to the total of all its obligations outstanding, secured or unsecured, including the notes and obligations then being authenticated and issued," excluding any receivable or installment obligation it owned or held which had been in default for longer than sixty days. There were also provisions for acceleration of payment of principal in the event of default for thirty days in any payment of interest; or of the insolvency, bankruptcy, or reorganization of the appellee; or of the institution of proceedings in bankruptcy or reorganization; or of an assignment for the benefit of creditors or the appointment of a receiver of all or substantially all of the appellee's property.

In so far as now pertinent, Schedule A-1, Title VIII of the Revenue Act of 1926, puts under the coverage of the stamp tax "* * * all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, * * *".

We accept without discussion the appellee's view that the instruments were neither taxable as "bonds" under the above statute and Art. 12 of T.R. 71 relating to instruments having the essential features of promissory notes but issued in series under a trust indenture nor as "certificates of indebtedness" within Art. 19 of the same regulations. But they obviously were not merely ordinary promissory notes evidencing debts arising in the ordinary course of business. The stamp tax on promissory notes was repealed in the Revenue Act of 1924, 26 U.S.C.A. Int.Rev.Acts, page 1 et seq., and was not subsequently re-enacted. The appellee uses that fact as the basis of its argument that these "notes" are not taxable. If it were enough for decision to determine whether the term "promissory notes" was a fair general description of these instruments there might be force to this contention. But a short reference to the legislative history of the present statute will, we think, adequately dispose of that. In Schedule A of the Revenue Act of 1898, 31 Stat. 940, a stamp tax was imposed on designated instruments which included bonds, debentures, and certificates of indebtedness. In the 1917 Act, 40 Stat. 319, in another paragraph in the same Schedule, a tax, but at a lower rate, was also placed upon other instruments which included inland bills of exchange, drafts, certificates of deposit drawing interest, orders for the payment of any sum of money not at sight or on demand, and any "promissory notes, except bank notes issued for circulation." This statute was amended several times before the tax on promissory notes was repealed as above stated, but promissory notes were never included in the paragraph taxing bonds, debentures, and certificates of indebtedness. This treatment of promissory notes indicates that what was repealed when the tax on such notes was eliminated was taxation which covered the notes used customarily in day to day commercial transactions of a short time credit character and not instruments, whether called notes or something else, by which a corporation obtained capital for a substantial period of time from investors for general use in its business just as it might by the sale of its bonds, debentures or similar securities. The tax on debentures was not repealed and if debentures are issued and sold it is clear that they are none the less taxable because they are called promissory notes. See Danville Building Ass'n v. Pickering, D.C., 294 F. 117 and Goodyear Tire and Rubber Com-

pany v. United States, 273 U.S. 100, 47 S.Ct. 263, 71 L.Ed. 558. This appellee as the issuing corporation may within reasonably accurate descriptive limits call the instruments it issues what it pleases, but it cannot escape taxation merely by its choice of a label.

We think these instruments are debentures within the meaning of that term in the statute. Treasury Regulations 71 promulgated in connection with the statute do not expressly define the word "debenture" and by implication its meaning was considered by the treasury to be too well understood to require such definition. It is a term in general use and in Lough, Corporation Finance, Vol. VI (1914) it is said that, "In law any instrument which formally acknowledges a debt and promises payment, including any written bond secured or unsecured, is a debenture. In finance, however, the term has come to be restricted to a bond which is not secured by a lien upon any specific property. In other words, it is for all practical purposes, simply an unsecured promissory note running for a number of years."

In 1 Bouv. Law Dict., Rawle's Third Revision, p. 784, a debenture is defined as "any instrument (other than a covering or trust deed) which either creates or agrees to create a debt in favor of one person or corporation or several persons or corporations, or acknowledges such a debt."

In Crowell's Dictionary of Business and Finance (1923) a debenture is described as "A certificate of debt issued by a corporation. Unless secured by a mortgage, it is simply a promise to pay, or in other words, a promissory note."

Similar definitions from similar sources may be added to the above but enough have been quoted, we think, to make it clear that these "notes" were well within the class of investment instruments commonly called debentures and that the insistence of the treasury upon taxing them under the above statute was correct. Their terms, appearance, and method of sale to a comparatively few investors who were required to state at least their then present intention to hold them for investment purposes without transfer to others combined to put them in a class apart from ordinary commercial promissory notes and into the category of debentures as that term is used in the statute in its setting with bonds, and certificates of indebtedness, to designate a type of corporate securities which does not include ordinary promissory notes.

Yet the appellee argues that the syntax of the statute itself precludes such a result as we have reached and it is thought that there is some support for its argument in Art. 12 of T.R. 71. The argument is that the statutory phrase "issued by any corporation with interest coupons or in registered form" qualifies all the preceding words in the section and not merely "all instruments, however termed, * * * known generally as corporate securities." If this contention were sound the decision below should be affirmed despite our holding that these "notes" were debentures for they would not be taxable debentures within the statute because they were issued neither with interest coupons nor in registered form. The support for the argument afforded by Sec. 12 of T.R. 71 is said to be found in the following quotation from that article: "Instruments containing the essential features of a promissory note, but issued in series, secured by a trust indenture, either in registered form or with coupons, * * * for optional registration in cases of bearer bonds, for authentication by the trustee and in some instances for redemption before maturity, or similar provisions, are bonds within the meaning of the statute, whether called bonds, debentures, or notes."

Thus it is urged that promissory notes which are properly classified as debentures for tax purposes are taxable only when they bear interest coupons or are issued in registered form and so are bonds within the above quotation from T.R. 71, Sec. 12. We do not agree. Bonds, debentures, or certificates of indebtedness, whether or not issued in registered form or with coupons attached, had been taxed in Schedule A in the paragraph of the statute entitled "Bonds of indebtedness" before the words "* * * and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities

* * * " were added by amendment in the Revenue Act of 1918, 40 Stat. 1057. It seems obvious that this change was not to restrict prevailing taxation but was to add to what was already taxable all other instruments generally known as corporate securities provided those to which taxation was extended were issued with interest coupons or in registered form.

Judgment reversed.