**UNITED STATES**
v.
**GENERAL SHOE CORP.**

Civ. No. 1614.

United States District Court
M. D. Tennessee, Nashville Division.

Dec. 23, 1953.

J. M. Swiggart, Asst. U. S. Atty., Nashville, Tenn., for plaintiff.

F. A. Berry, Nashville, Tenn., and Ernest M. Callomon, Washington, D. C., for defendant.

DAVIES, District Judge.

The above entitled cause was heard before the Court on September 17–18, 1953.

The cause was submitted upon the pleadings, evidence, exhibits, and argument of counsel for plaintiff and defendant, and, after due consideration thereof, the Court enters its Findings of Fact and Conclusions of Law, as follows:

## Findings of Fact

1. This action by the United States for the recovery of documentary stamp taxes from the defendant in the amount of $8,250 was authorized by the Commissioner of Internal Revenue and was brought under the direction of the Attorney General of the United States.

2. The defendant is a Tennessee corporation with an office and its principal place of business located at Nashville, Davidson County, Tennessee.

3. On February 27, 1948, the defendant entered into separate loan agreements with Bankers Trust Company, as trustee under International Harvester Company Pension Trust Agreement, dated March 25, 1929, Bankers Trust Company, as trustee under agreement with the American Brake Shoe Company, dated May 17, 1940, Bankers Trust Company, as trustee of various Pension Trusts, Massachusetts Mutual Life Insurance Company, New England Mutual Life Insurance Company, Teachers Insurance and Annuity Association, Shell Provident Fund, and Shell Pension Fund, to borrow an aggregate of $7,500,000, and concurrently issued instruments evidencing the loans in the aggregate principal amount of $7,500,000.

4. The instruments were referred to in the agreements and in the instruments themselves as "notes" or as "promissory notes". The agreements with each of the lenders and the instruments issued with them were identical in content, except for difference in the name of the lender and the amount of the loan.

5. The agreements provided for the payment of the notes in installments on March 1, 1951, and on each September 1 and March 1 thereafter to and including September 1, 1962, and the balance being payable on March 1, 1963, with interest on the unpaid portion of the principal at the rate of $3\frac{1}{8}$ per cent per annum payable semiannually on March 1 and September 1 in each year beginning September 1, 1948.

6. The instruments were printed on plain paper and did not have interest coupons attached. They contained provisions and stipulations sufficient to fill ten printed pages of ordinary pamphlet paper in fairly small print. The loan agreements contained additional provisions sufficient to fill approximately six similar printed pages.

7. The agreements, pursuant to which the "promissory notes" were issued by defendant, contained, among other things, the following provisions, conditions, and warranties:

(a) That there has been delivered by defendant to the lender correct and complete financial statements for designated periods prior to the date of the agreement.

(b) That the loan was being made by the lender to defendant for its own account for investment and with no present intention of selling, distributing or otherwise disposing of said note or any part thereof.

(c) That after execution of the agreement and note, defendant would furnish the lender with periodic financial statements similar to those sent to defendant's stockholders, or which it may file with any governmental agency.

(d) That qualified officers of the lender or any persons designated by any such officer in writing would have the right to visit and inspect any of the properties of the defendant or examine the books of the defendant or those of its subsidiaries and discuss its financial affairs.

(e) That defendant agreed to pay all expenses incident to the transaction.

8. Each of the "promissory notes" issued by defendant to the lenders among other things, contained the following provisions, covenants and warranties:

(a) That the "note" or "notes" issued by defendant were intended to refer to one or more of the "$3\frac{1}{8}$% Promissory Notes" concurrently issued in the total principal amount of $7,500,000 by the defendant pursuant to the terms of identi-

cal, separate loan agreements dated February 27, 1948, entered into between the defendant and the respective lenders.

(b) That the holder of any "note" or "notes" could surrender the same for exchange and at the expense of the defendant receive in exchange therefor a printed "note" or "notes", each in such principal amount as the holder might request.

(c) That at the election of the defendant it had the privilege of prepayment of portions of the principal on payment of a prepayment charge, depending upon the date of prepayment.

(d) That defendant would pay and discharge all taxes, assessments and charges upon income, property and claims which, if unpaid, might legally become a lien or charge upon its property.

(e) That defendant would maintain adequate insurance on its properties and properties of its subsidiaries.

(f) That defendant would not create, incur or assume, directly or indirectly, any additional funded indebtedness in addition to the notes unless certain specific conditions were met.

(g) That defendant would not create or assume any mortgage, pledge, encumbrance, lien or other charges of any kind upon any of its properties or of its subsidiaries subject to specific limitations.

(h) That defendant would not merge or consolidate with any other corporation and that it would not sell, lease or dispose of its properties, except under certain stated conditions.

(i) That defendant agreed to restrict the declaration and payment of dividends and the redemption or retirement of its capital stock.

(j) That upon default of payment of interest of the "note" when due or upon adjudication of insolvency or bankruptcy, appointment of a receiver or trustee in bankruptcy, or upon its failure to perform the terms, conditions and covenants of the agreement and those contained in the "note", defendant covenanted that there would be acceleration of the maturity thereof.

(k) That the holders of not less than 85% in the aggregate principal amount of the notes on behalf of the holders of all of the notes might waive any past default on the notes and its consequences, except a default in the payment of interest, principal and prepayment charge of any of the notes.

(l) That with the consent in writing of the holders of not less than 85% in the aggregate amount of the notes the company might, subject to certain limitations, at any time modify the notes for the purpose of adding, changing or eliminating any provisions or covenants of the notes or modifying the rights of the holders of the notes and that any such modification should apply equally to all holders of the notes and be binding on the company and all holders of the notes.

9. The president and other officers of the corporation had for some time past considered and discussed the need for additional financing for this corporation by the issuance of new stock or by sale of debenture bonds. A special committee was appointed to thoroughly investigate the possibilities of such additional financing.

10. The defendant addressed a letter to each of the lenders containing the agreement of the defendant if and when requested by one or more of the original holders of certain "notes" "to issue debentures in exchange for any one or more of said promissory notes and to pay federal stamp taxes, if any, which might subsequently be determined to be due upon the issue of said notes."

11. The notes were issued at a discount, the defendant receiving $991.10 for each $1,000 it obligated itself to pay.

12. All facts admitted by the pleadings and all facts stipulated to, not herein specifically found, are found to be facts and are incorporated herein by reference.

13. The "promissory notes" issued by defendant pursuant to the agreement of

February 27, 1948, are the type of instruments subject to documentary stamp tax as a debenture under the provisions of Section 1801 of the Internal Revenue Code, 26 U.S.C.A. § 1801.

14. No tax has been paid on account of the issuance of any of the instruments.

Conclusions of Law

1. The Court has jurisdiction of the parties and subject matter of this action.

2. The excerpt from the minutes of the regular meeting of directors of the General Shoe Corporation held December 5, 1947, at which meeting a committee was appointed to investigate the possibilities of a loan, and the excerpt from the minutes of the special meeting of the directors of the General Shoe Corporation held February 23, 1948, authorizing the making of the loan and the loan agreements dated February 27, 1948, are part of the circumstances surrounding the transaction and are to be considered by the Court in determining the taxability of the transaction.

3. The instruments delivered by the defendant to Bankers Trust Company, as Trustee under International Harvester Company Pension Trust Agreement dated March 25, 1929, Bankers Trust Company, as Trustee under Agreement with the American Brake Shoe Company, dated May 17, 1940, Bankers Trust Company, as Trustee of various Pension Trusts, Massachusetts Mutual Life Insurance Company, New England Mutual Life Insurance Company, Teachers Insurance & Annuity Association, Shell Provident Fund, and Shell Pension Fund, in an aggregate amount of $7,-500,000 pursuant to the loan agreement of February 27, 1948, were debentures within the meaning of Section 1801 of the Internal Revenue Code and were, therefore, subject to the documentary stamp tax imposed by that statute.

4. The documentary stamp taxes sought to be recovered in this action are properly due and owing from the defendant to the plaintiff together with interest at the rate of 6% from February 27, 1948.

5. Judgment will be entered accordingly.